# *Law Offices of Dawn V. Martin*

Specializing in Equal Employment Opportunity Law and Personal Injury Law

| | |
|---|---|
| 1090 Vermont Avenue | Telephone: (202) 408-7040 |
| Suite 800 | FAX:       (703) 642-0208 |
| Washington, D.C. 20005 | DVMARTINLAW@yahoo.com |

March 30, 2005

Michael Petkovich, Esquire
Jackson and Lewis
8614 Westwood Center Drive
Vienna, Virginia 22182

**By mail and *facsimile* (703) 821-2267**

Re: **Litigation against ARC for Termination of Ms. Lowry Martin**

Dear Mr. Petkovich:

      In August of 2004, you and I spoke regarding potential claims of Ms. Lowry Martin, against the ARC of the District of Columbia, as outlined in the attached letter of July 20, 2004. At that time, we were unable to settle these claims. At this time, Ms. Martin has directed me to institute litigation.

      The ARC terminated Ms. Martin after she filed a grievance regarding Ms. Annetta Graham's unprofessional behavior, vulgar insults and failure to perform her duties for clients, as outlined in the accompanying letter of July 20, 2004. Instead of processing Ms. Martin's grievance, as required by the ARC"S own written policy, incorporated into the employment contract, the ARC's managers terminated Ms. Martin, accusing her of not being a "team player."

      When you and I spoke, you told me that Ms. Graham was an excellent employee and highly respected, such that Ms. Martin's claims against her were discredited. I pointed out that the ARC was obligated to process Ms. Martin's grievance and investigate her claims, and breached its employment contract with her when it refused to process the grievance and retaliated against her for filing it by terminating her.

      Over the past eight months, events have transpired that may affect your view of the case and/or the willingness of the ARC to settle this claim. For example, Annetta Graham, who accused Ms. Martin of not performing her job and of lying about her, has since been fired. Ms. Martin's information is that Ms. Graham was terminated for failing

to report for work, fraudulently claiming that her son was having heart surgery, when in fact, her son was well and attending school. In addition, Ms. Martin has collected affidavits from former co-workers, parents of ARC clients and two attorneys representing ARC clients, who have attested to the excellent job performance of Ms. Martin and/or the poor performance of Ms. Graham and/or the ARC, in general, with procedures that leave clients sitting, day after day, with no work and no training, despite the ARC's obligation, under its government funding agreements, to provide job training while the clients are on the ARC's premises, awaiting work assignments.

In addition, we had hoped that Ms. Martin's reports regarding the failure of the ARC to appropriately use the funds provided to ARC, by both the United States and District of Columbia governments, would prompt proper use of the funds and better services to the clients. We had also hoped that Ms. Martin's reports of the responses of Ms. Meccariello and Mr. Dempsey, expressing their fear that Ms. Martin would report the lack of required client services to outside sources, rather than addressing the lack of these required services, would lead to changes in management and better services for the clients. Although it appeared, within the last eight months, that some changes might occur, management has not changed and the ARC's clients are still not being properly served.

Ms. Martin has now gathered more than enough evidence and witness statements to support her claims, and her fiancé is willing to finance the litigation. Before drafting a complaint, which I must first serve on the funding government agencies, consistent with *qui tam*, or "whistleblower" litigation, I am again attempting to settle this matter. I believe that this is a case that should be settled. I also believe that, when the Board of Directors of the ARC understands why the case should be settled, it will also assess the problems in management and make the changes that will assist and serve the ARC's clients.

Ms. Martin is still willing to accept a settlement on the same bases that she was willing to accept in July of 2004; however, Ms. Martin's financial losses are greater than they were in July of 2004, since she has been unable to secure full-time employment since she was fired by the ARC. Ms. Martin has just secured part-time employment and will begin on April 4, 2005, at the rate of $12.00, for twenty hours per week, as a job coach for persons with physical disabilities and continues to seek full time employment.

**Remedy**

Ms. Martin seeks the following:

1) Back pay, in the amount of 8 months salary, now estimated at approximately $30,000, minus the $7,200.00 unemployment that she received, resulting in a loss of $22,800.00;

2) reinstatement or future pay

   a. reinstatement, under conditions that ensure that ARC management will not be permitted to harass her, retaliate against her for raising the

2

        claims discussed herein, or otherwise undermine her ability to perform her job; or

    b. compensate Ms. Martin in the amount of a year's salary, $28,000, as "future pay" to allow her find comparable employment, and provide her with a reference that honestly reflects her work performance at ARC;[1] and

3) develop a rehabilitative and/or recreational plan for the persons with mental retardation who are awaiting jobs and sit at ARC without activities day after day;

4) compensate Ms. Martin, in the amount of $40,000, for the emotional distress that she has suffered as a result of ARC's intentional breach of her employment contract, deprivation of her contractual rights and intentional infliction of emotional distress by support of a co-worker's harassment of her, causing a hostile work environment;

5) pay Ms. Martin's attorneys' fees (currently $12,000.00, including 30 hours of work, at a rate of $400.00 per hour).[2]

You may write or call my office to discuss possible resolution of this matter. If I do not receive a response within seven (7) days, however, I will assume that you are not interested in resolving this matter without litigation and will begin drafting a complaint, to served upon the funding government agencies, consistent with *qui tam*, or "whistleblower" litigation and then to be filed in Federal District Court for the District of Columbia.

        Sincerely,

        Dawn V. Martin, Esquire

---

[1] Ms. Martin recognizes that the damage of $40,000.00 yearly salary loss is mitigated by her part-time job and estimates that she will earn $12,000.00, for 50 weeks of work, at $240.00 per week, resulting from $12.00 per hour, at 20 hours per week.

[2] Attached is my resume, describing my twenty-four years of legal experience and expertise in employment law and experience with the False Claims Act, justifying the *Laffey* rate of $425.00 per hour.

3