**DONALD E. EXNER**
ATTORNEY AT LAW
6301 IVY LANE
Suite 700
GREENBELT, MARYLAND 20770
TEL: (301) 345-9522
FAX: (301) 345 5375

## DECLARATION OF DONALD E. EXNER, ESQUIRE

I, Donald E. Exner, Esquire, declare, under penalty of perjury, the following:

1)  I am an attorney, duly admitted to practice . . law in the District of Columbia and Maryland.

2)  I represent Cartina ████████, who is a client of the ARC of the District of Columbia. Located at 817 Varnum St., N.E. Washington, DC 20018. Ms.████████ is a person with mental retardation. I have been her attorney since 1991.

3)  Since at least 1991, community based employment has appeared to be a realistic long-range goal for Cartina. One problem when trying to get her employment in the community was that at times, she would become agitated and start crying without provocation. To counteract that problem, it was recommended that Cartina would benefit from Assertive Social Skills Training, and that if her mood became stabilized and she continued her ability to stay on track, a supportive work setting might be appropriate.

4)  On August 2, 1999, Ms.████████ was placed in the Work Activity Center of N.C.C. This was a program of vocational training work and adjustment therapy in a sheltered environment. It was expected that she would either transition through this program to a more independent work opportunity (community based employment) or remain long–term in this program, depending on her adjustment to the work environment.

5)  From a period of March 2001 to March 2002, Cartina averaged earnings of $117.23 per month. There she performed various tasks and duties such as collating, sealing, stamping and folding various items. She could count in numerical order and assist with bulk sorting by arranging the mail by state or numerical order. She has measurable skills. She can read at the first grade level, perform basic addition and subtraction, multiplication and division. Unfortunately, in May 2002, the program ended due to a lack of funding.

6)  In December of 2002, Ms. ████████ was placed in the day program at D.C. ARC. I had expected that this placement would increase her chances of getting supportive employment, as I understood that this was the stated goal. I made quarterly visits to the D.C. ARC to inquire about her status. I had discussions with Arnnetta Graham and Joseph Rochette regarding supportive employment for Cartina. I soon became

disappointed about her lack of progress towards that goal. On April 28, 2003, I advised the B.C.S. case manager of my dissatisfaction with Cartina's situation at D.C. ARC. – She was not earning very much money.

7)      From August to December, 2003, Cartina was averaging $60.00 a month. At the Court Review Hearing on March 17, 2005, it was represented that she was currently earning $18.00 every two weeks.

8)      On April 20, 2004, I advised the B.C.S. case manager that if Cartina did not obtain employment by the end of the year, I would be filing a motion with the court.

9)      On June 28, 2004, I received a message from D.C. ARC that there was an emergency case conference scheduled for June 30, 2004. On said date, I learned that Cartina would be getting employment in a cafeteria.

10) On July 2, 2004, during a telephone discussion with Lowry Martin, she advised me that she was a Job Coordinator with D.C. ARC and that Cartina would be working at the American Museum of History. She indicated that she would do what was necessary to get Cartina to work on July 5, that she would get the necessary police clearance, and, if necessary, transport her to work, the first week. I told Ms. Martin that getting supportive employment for Cartina was something I had been seeking for years and that I was deeply grateful to her for her efforts.

11) On August 5, 2004, I was advised by Gary Washington, the B.C.S. case manager, that Cartina would not be working any longer at the cafeteria. They wanted someone more independent without a job coach. On the same date, in a telephone discussion with Ms. Martin, she advised me that hiring a job coach with no experience, set up Cartina for failure.

12) On August 8, 2004, Arnnetta Graham of D.C. ARC informed me that although Cartina's employer liked Cartina very much and that she was a hard worker, she was terminated because she didn't communicate well enough. I informed Ms. Graham that Cartina would do better if she was placed in a small work setting doing clerical work.

13) Ms. Martin was able to accomplish what no one else had been able to accomplish in 14 years – obtain supportive employment for Cartina.

14) Although I was extremely pleased that Cartina obtained supportive employment, I had some concern regarding how successful it was going to be. Because of Cartina's emotional behavior, I felt that her best opportunity for supported employment would be doing some mail work or clerical work in a small office setting where she would have very little contact with the general public. She does very well when she is kept busy and being around people whom she is very familiar with. I would have to agree with Ms. Martin that, with her background, placing Cartina in the job situation in a cafeteria, was setting her up for failure.

15) I was very disappointed when I learned that Ms. Lowry Martin was no longer employed by D.C. ARC. I believe that she was very sincere in getting Cartina into supportive employment. As I said earlier, she was able to accomplish what no one else had accomplished for 14 years, despite many promises to do so. Now she is gone! Who is going to help Cartina?

I swear that the above statements are true and correct, to the best of my recollection.

_Donald E. Exner_

Donald E. Exner, ESQ.

This ___18th___ day of May, 2005
In the State of Maryland