**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
LOWRY MARTIN,                 )
                              )
              Plaintiff,      )
                              )   Civil Action No. 05-1411 (EGS)
        v.                    )
                              )
ARC OF THE DISTRICT           )
OF COLUMBIA,                  )
                              )
              Defendant.      )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Lowry Martin commenced this action against her former employer, the Arc of the District of Columbia ("the Arc"), alleging violations of the False Claims Act, the Whistleblower Protection Act, breach of contract, and intentional infliction of emotional distress. Pending before the Court is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon consideration of the motion, and the response and reply thereto, applicable law, and for the following reasons, defendant's motion shall be **GRANTED** in part and **DENIED** in part.

I.  **Background**

    A.  **The Parties**

Defendant the Arc is a non-profit 501(c)(3) membership organization established to serve persons with mental retardation and related developmental disabilities in the District of

Columbia.  Compl. 1.  The Arc receives funding from the federal government, through the Department of Health and Human Services, and from the District of Columbia government, through the Mental Retardation and Development Disabilities Administration ("MRDDA").  *Id.*  Allegedly, both the federal and local government require the Arc to hire job coaches with at least one year of experience as a condition to receive funding.  *Id.*

Plaintiff Lowry Martin was employed by the Arc as a Employment Marketing Specialist, also known as a "Coordinator, Job Development Activities for Conversion Model," from October 27, 2003 until July 19, 2004.  *Id.*  The basic function of plaintiff's job was to "coordinate and implement a comprehensive job development and placement program for persons with disabilities involved in the agency conversion models."  *Id*. Ex. D at 1.

B.    **Plaintiff's Allegations**

During the time that plaintiff was employed at the Arc, Annetta Graham was her co-worker.  Compl. 5.  Ms. Graham's responsibilities allegedly included managing the staff to provide services to clients.  *Id.*  According to plaintiff, there were instances in which Ms. Graham neglected her duties.  *Id.* Plaintiff alleges that in those instances, she would contact the client's case manager at the MRDDA to facilitate providing the necessary services to the client.  *Id.* 5-7.  Plaintiff allegedly

approached Ms. Graham to discuss how the clients were negatively impacted when Ms. Graham neglected her duties, to which Ms. Graham allegedly responded by stating, "F--k you, Lowry." *Id.* 5.

Plaintiff alleges that the Arc has a Personnel Policies Manual ("Manual"), which governs the Arc's employment practices. *Id.* 13. Plaintiff included selected portions of the Manual, namely the grievance and disciplinary procedure, as exhibits to her compliant. *See* Compl. Ex. C. On July 14, 2004, plaintiff filed a grievance to report Ms. Graham's alleged lack of professionalism and to report the instances in which Ms. Graham had allegedly neglected her duties. Compl. 6-7. Plaintiff stated in the grievance that she had contacted case managers at the MRDDA to facilitate providing services to clients when Ms. Graham had failed to do so. *Id.* 7.

Plaintiff alleges that, contrary to the Manual's grievance procedure, no one within the Arc's management formally responded to her grievance. *Id.* 8. Rather, on July 15, 2004, Mary Lou Meccariello, the Executive Director of the Arc, allegedly chastised plaintiff for filing the grievance, and told plaintiff that "it was 'ridiculous' [she] had submitted 'a four-page memo' of 'he said, she said.'" *Id.* Plaintiff alleges that Ms. Meccariello also told her that she "should never indicate to a person outside of Arc that a co-worker had made a mistake because it reflects badly upon Arc." *Id.* 9. Two days later, Ms.

3

Meccariello fired plaintiff, and on July 19, 2004, plaintiff received an official termination letter. *Id*. 11.

Plaintiff further alleges that the Arc is not compliant with the federal and local funding requirement to hire job coaches with at least one year of experience. *Id.* 2. Due to this alleged non-compliance, plaintiff contends that the Arc *must be* submitting falsified documents to the federal and local governments each year to obtain funding.[1]  Pl.'s Opp'n 27. According to plaintiff, the Arc fired her to prevent her from reporting to the case manager at the MRDDA that "the Arc [was] not utilizing government funds in the manner prescribed or anticipated in its contracts with the government." Compl. 10.

Plaintiff brings the following claims against the Arc: 1) a *qui tam* relator action under the False Claims Act ("FCA"); 2) a retaliation claim under the FCA; 3) a retaliation claim under the Whistleblower Protection Act ("WPA"); 4) breach of contract; and 5) intentional infliction of emotional distress.[2]

---

[1] Plaintiff does not make this allegation in the complaint, but rather in the opposition to the motion to dismiss. *See* Pl.'s Opp'n 27.

[2] Although it is unclear from plaintiff's complaint, plaintiff clarifies in her opposition to the motion to dismiss that she is asserting both a *qui tam* action and a retaliation claim under the FCA. *See* Pl.'s Opp'n 1.

4

## II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff fails "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  As a general matter, the Federal Rules require only that a plaintiff provide "a short and plain statement of the claim . . . [that will] give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests."  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing Fed. R. Civ. Pro. 8(a)(2)).  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court discussed the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  The Court stated that the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," *id.* at 1965, or must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 1974.  The Court referred to this as "the plausibility standard," *id.* at 1968, but emphasized that it was not imposing a heightened fact pleading of specifics or a probability requirement at the pleading stage.  *Id.* at 1973-74.

The court "must accept as true all of the factual allegations contained in the complaint."  *See Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008) (quoting *Erickson*, 127 S. Ct. at 2200).  *See also Twombly*, 127 S. Ct. at 1965; *Brown*

*v. Dist. of Columbia*, 514 F.3d 1279, 1281 (D.C. Cir. 2008).

"Detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, but a plaintiff must furnish

"more than labels and conclusions" or "a formulaic recitation of

the elements of a cause of action." *Twombly*, 127 S. Ct. at

1964-65. The complaint is construed liberally in the plaintiffs'

favor, "with the benefit of all reasonable inferences alleged,"

*In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007), but the

court need not accept inferences unsupported by facts in the

complaint, nor must the court accept plaintiffs' legal

conclusions. *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994).

The court is limited to considering facts alleged in the

complaint, any documents attached to or incorporated in the

complaint, matters of which the court may take judicial notice,

and matters of public record. *See E.E.O.C. v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

**III. Discussion**

**A.  *Qui Tam* Action under the False Claims Act**

The False Claims Act, 31 U.S.C. §§ 3729 -3733, imposes a

civil penalty and treble damages on any individual who, *inter*

*alia*, "knowingly presents, or causes to be presented, to an

officer or employee of the United States Government ... a false

or fraudulent claim for payment or approval." *See* 31 U.S.C. §
3729(a).  The FCA permits a private party, a "relator," to
initiate a *qui tam* action on behalf of the government.[3]  *See* 31
U.S.C. § 3730(b).  The government may opt to take over the suit,
but if it declines to do so, the relator may elect to proceed and
collect a significant percentage of any recovery.[4]  *See U.S. ex
rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1254
(D.C. Cir. 2004) (citing §§ 3730(b)(4)-(d)).

   *Qui tam* actions state a claim in fraud, and thus must be
plead with particularity.  *Id.* at 1256 ("when a plaintiff alleges
fraud, as when stating a claim under the FCA, Rule 9(b) requires
that the circumstances constituting fraud or mistake . . . be
stated with particularity.").  Federal Rule of Civil Procedure
9(b)'s particularity requirement serves several purposes.  It
"discourage[s] the initiation of suits brought solely for their
nuisance value, and safeguards potential defendants from
frivolous accusations of moral turpitude.... And because 'fraud'
encompasses a wide variety of activities, the requirements of

---

   [3] Cases brought under the FCA are known as *qui tam* actions, which is an
abbreviation of the Latin phrase, "*qui tam pro domino rege quam pro se ipso in
hac parte sequitur*" - or, "who pursues this action on our Lord the King's
behalf as well as his own."  *Vt. Agency of Natural Res. v. United States ex
rel. Stevens*, 529 U.S. 765, 768 n.1 (2000).

   [4] Although it is apparent that the plaintiff served a copy of the
complaint on the federal government on September 8, 2005, the government did
not elect to intervene in this action.  *See* docket entry no. 2.

Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981).

In *Williams v. Martin-Baker Aircraft,* the court of appeals affirmed the district court's dismissal of a *qui tam* action for failure to plead with particularity. In that case the plaintiff alleged that his former employer violated the FCA by failing to comply with certification requirements under the Truth in Negotiations Act and the Federal Acquisition Regulation. *Williams*, 389 F.3d at 1255. Although plaintiff alleged in his compliant that the fraudulent activity occurred "at least until 2002," the *Williams* court found that plaintiff failed to plead with particularity the specific time frame for the fraudulent activity. Similarly, the court found that plaintiff failed to plead with particularity the identity of those who participated in the fraud. Plaintiff's repeated references in the complaint to "management," followed by a long list of names, without ever explaining the role these individuals played in the alleged fraud, was insufficient.[5] *Id.* at 1257. "This imprecision not only failed to give the companies sufficient information to answer the complaint, but it also subjected the named individuals

---

[5] Although plaintiff clarified in his opposition brief the time frame for when each defendant allegedly began engaging in fraudulent activity, the court found that at that point it was too late. *Williams*, 389 F.3d at 1257.

to vague, potentially damaging accusations of fraud."  *Id.*
Although Federal Rule of Civil Procedure 9(b) does not require
plaintiffs to allege every instance of fraud, "defendants must be
able to defend against the charge and not just deny that they
have done anything wrong."  *Id.* at 1259 (quoting *U.S. ex rel. Lee
v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir.
2001)).

Here, the crux of plaintiff's *qui tam* action is that the Arc
did not comply with the federal and local government's funding
requirement that it hire job coaches with at least one year of
job experience.  Compl. 2.  Allegedly as a result of the Arc's
failure to hire job coaches, "some of the Arc's clients were
sitting at [the] ARC, day after day, not receiving job training
and not being placed" in jobs.  Compl. 8.  Plaintiff contends in
her complaint that "the Arc's failure to utilize government funds
in the manner prescribed or anticipated in its contracts with the
government constitutes a misuse of government funds and
resources, in violation of the False Claims Act."  Compl. 13.

Nowhere in plaintiff's complaint does she allege that a
fraudulent claim was submitted to the government for payment, nor
does she allege who submitted such a claim, nor the time frame
for when the fraudulent submissions were made.  In fact, it is
not until plaintiff's opposition to the motion to dismiss that
any allegation of "fraud" appears.  In plaintiff's opposition

brief, she asserts that "the Arc fraudulently received funds under the pretense of helping persons with mental disabilities train for and obtain job employment." Pl.'s Opp'n 15. Plaintiff alleges that despite the Arc's non-compliance with its funding requirements, the Arc continued to receive funding from the government each year, leading plaintiff to the "natural conclusion" that "the Arc falsified its reports and funding applications to the government." Pl.'s Opp'n 28. The only specific allegation plaintiff provides to put the Arc on notice as to the substance of her fraud claim is that Ms. Meccariello is "one of the persons who conceal[ed] from the United States government the fraudulent representations made by others." Pl.'s Opp'n 15.

Plaintiff does not make any additional allegations in support of her *qui tam* claim, but rather requests the opportunity for discovery to find evidence to support her claim. Pl.'s Opp'n 14-15, 28. Although, pleadings on "information and belief" are allowed when a plaintiff is unable to meet the particularity standard because the defendant controls a relevant document, the standard for pleadings on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to "'prevent[ ] the filing of a complaint as a pretext for the discovery of unknown wrongs.'" *Kowal*, 16 F.3d at

1271 n.3. (quoting *Nuebronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).

In sum, plaintiff fails to plead with particularity a viable claim under the FCA because the complaint fails to identify who, if anyone, made a false representation to the government and fails to provide any of the purported details such as the time, place, and contents of the alleged false representation. *See Williams*, 389 F.3d at 1259. Thus, plaintiff's *qui tam* action shall be dismissed.

### B.  Retaliation under the False Claims Act

The FCA also contains a "whistleblower" protection provision to protect *qui tam* relators who suffer retaliation on account of their conduct "in furtherance of an action under [the FCA]." *See* 31 U.S.C. § 3730(h).  The statute provides that: "[a]ny employee who is discharged . . . because of lawful acts done by the employee ... in furtherance of an action under this section ... shall be entitled to all relief necessary to make the employee whole." *See* 31 U.S.C. § 3730(h).  Unlike the *qui tam* action, claims for retaliation under the FCA are not constrained by the fraud pleading standard, and need only satisfy the general pleading requirements of Federal Rules of Civil Procedure 8. *See Williams*, 389 F.3d at 1251.

To assert a retaliation claim under the FCA, the employee must show: (1) that he engaged in protected activity ("acts done

... in furtherance of an action under this section"); and (2) that he experienced discrimination "because of" his protected activity. *Id.* To show that plaintiff was engaged in protected activity, i.e., acts "in furtherance of" an FCA action, the employee does not need to have initiated a *qui tam* suit at the time of such acts, or even have contemplated initiating such a suit. *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 739-41 (D.C. Cir. 1998); *see also Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005). However, the relator must "be investigating matters that reasonably could lead to a viable FCA case." *Hoyte v. United States*, 2008 WL 564649, *4 (D.C. Cir. Mar. 4, 2008) (quoting *Yesudian*, 153 F.3d at 740 (internal citations omitted)).

An employee's investigation of nothing more than his employer's non-compliance with federal or state regulations does not state a claim under the FCA. *Yesudian*, 153 F.3d at 740 (citing *Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)). *See also Hoyte*, 2008 WL 564649 at *5 (affirming the dismissal of a FCA retaliation claim when plaintiff's "investigation was into mere regulatory noncompliance and did not concern false or fraudulent claims as it must to support a retaliation claim under" the FCA)(internal citations omitted). It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government

12

benefit. *Hopper*, 91 F.3d at 1266. This does not mean that other types of violations of regulations, or conditions set for the receipt of moneys, are not remediable; it merely means that such are not remediable under the FCA or the citizen's suit provisions contained therein. *Id.* Absent actionable false certifications upon which funding is conditioned, the False Claims Act does not provide such a remedy. *Id.*

Here, plaintiff does not allege facts in her complaint to support an inference that she was investigating a viable FCA claim. Plaintiff alleges that the Arc fired plaintiff "based on Ms. Meccariello's fear that Ms. Martin would report to the federal and/or D.C. government that the Arc is not utilizing government funds in the manner prescribed or anticipated in its contracts with the government." Compl. 13. Plaintiff does not allege that she was investigating the Arc's submission of a false claim for payment or approval to the government, but rather the Arc's failure to comply with its funding requirements. This allegation does not constitute a viable action under the FCA, and therefore plaintiff did not engage in any protected activity *in furtherance of* a viable FCA claim. *See Yesudian*, 153 F.3d at 740. Thus, plaintiff's retaliation claim under the FCA shall be dismissed.

**C.    District of Columbia Whistleblower Protection Act**

To make a prima facie showing of under the District of Columbia Whistleblower Protection Act ("WPA"), the plaintiff must establish by a preponderance of the evidence that he was the subject of a "prohibited personnel action" because of his refusal to comply with an "illegal order" or because he has made a "protected disclosure." *See* D.C. Code § 1-615.53.

The Arc argues in its motion to dismiss that the WPA only protects current and former employees of the D.C. government. According to the defendant, the Arc is not a D.C. governmental agency, thus its employees are not covered by the WPA. Def.'s Mot. 2. Plaintiff did not respond to this argument in her opposition to the motion to dismiss.

Local Civil Rule 7.1(b) requires an opposing party to file a memorandum of points and authorities in opposition to a motion within 11-days of the filing of the motion, or the court may treat the motion as conceded. *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997). Arguments not addressed in the motion to dismiss are also treated as conceded. *See Zakiya v. United States,* 267 F. Supp. 2d 47, 54 (D.D.C. 2003)(citing *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the

14

defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (internal citations omitted)). Therefore, this Court treats defendant's argument that the WPA does not apply to employees of the Arc as conceded, and plaintiff's claim under the WPA shall be dismissed.

###    D.    Breach of Contract

Defendant contends that in the absence of an employment contract, the presumption in the District of Columbia is that employment relationships are terminable at-will, and thus plaintiff's breach of contract claim should be dismissed.  Def.'s Mot. to Dismiss 5.  *See Minihan v. Am. Pharm. Assn.*, 812 F.2d 726 (D.C. Cir. 1987); *see also Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C. 1991).  Plaintiff argues that despite this presumption, an employee manual can serve to vest employees with reasonable expectations that they will not be fired without due process, thereby converting an at-will relationship to a contractual relationship.  Pl.'s Opp'n 17.

Plaintiff relies on *Yesudian*, a case in which the court of appeals held that the presumption that employees are terminable at-will in the absence of an employment contract is rebutted when the employee is provided with a manual that "set[s] forth a distinction between probationary and permanent employees, providing that the first could be discharged summarily but the latter only .... [after] 'specific preconditions had [been]

15

met.'"  *Yesudian*, 153 F.3d at 745 (citing *Sisco v. GSA Nat'l Capital Fed. Credit*, 689 A.2d 52, 54 (D.C. 1997)).  "[S]uch manuals generally create a factual question for the jury as to the existence of a contract."  *Yesudian*, 153 F.3d at 745 (internal citations omitted).

The *Yesudian* Court found that a university professor stated a claim for breach of contract against the university when he was fired in derogation of the disciplinary procedure outlined in the employee handbook.  *Id.* at 745-49.  The university argued that the professor was an at-will employee and that the handbook could not be construed as a contract because it included the following disclaimers: 1) "the University reserves the right unto itself to maintain exclusive discretion to exercise the customary functions of management including, but not limited to, the discretion to select, hire, promote, demote, ... [or] terminate;" and 2) "this document is not to be construed as a contract."  *Id.* at 746.  The *Yesudian* court held that promises "that are clear enough in limiting the right to terminate to specific causes or events" effectively "reverse the normal presumption" that there is an at-will relationship.  *Id.* (*c*iting *Sisco*, 689 A.2d at 55).  Despite the reservation of rights clause, the court found that "the provisions in the handbook relating to termination of employment are phrased in such a manner as to lead an employee to believe

that the University does not have unfettered discretion in its termination decisions." *Id.*

By not revoking a manual, nor disclaiming its binding character, the reasonable expectation of its performance by the employer continues. *Id.* To repudiate a handbook's binding character, thereby making it "unenforceable at law," the handbook must "contain language clearly reserving the employer's right to terminate at will." This can be accomplished by including language in the manual which states that "the manual is not a contract and that employees may be terminated at will." *Id.* at 747 *(*citing *Sisco*, 689 A.2d at 55). *See also Kerrigan v. Britches of Georgetowne*, Inc., 705 A.2d 624, 627 n.3 (D.C. 1997) ("The employee handbook expressly states that it is not an employment contract and that 'nothing in this Handbook is intended to affect the "at-will" employment relationship.'"); *Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 269 n.1 (D.C. 1993) ("This handbook is ... not an employment contract and does not guarantee any fixed terms and conditions of employment.... Employment for management personnel is for no definite period [and] is terminable at will...."); *Goos v. National Ass'n of Realtors*, 715 F.Supp. 2, 4 (D.D.C. 1989) ("This handbook does not constitute an employment contract.... As an employee ... you are considered to be an employee-at-will.")).

Plaintiff attached as an exhibit to her complaint the disciplinary and grievance procedures from the Arc's Personnel Policies Manual.[6] *See* Compl. Ex. C.  The Arc's disciplinary procedure distinguishes between temporary, probationary and part-time employees on the one hand, and regular employees, such as the plaintiff, on the other.  *Id.* at 3.  The Manual states that for non-probationary employees, "the discharge of an employee for other than reasons of gross misconduct will be subject to the progressive disciplinary process as follows: verbal warnings; written warnings; return to probation status; suspension without pay; and finally discharge."  *Id.* at 4.

By distinguishing between probationary and permanent employees, and providing that the former could be discharged summarily, while the latter only after certain conditions have been met, the Arc made promises "that are clear enough in limiting the right to terminate to specific causes or events." *See Yesudian*, 153 F.3d at 746.  Thus, plaintiff has successfully pleaded facts to support an inference that she had a contractual

---

[6] Although the defendant contends that the Arc's Personnel Policies Manual disclaims its binding character and attached selected portions of the Manual to the Motion to Dismiss, at this stage of the proceedings, the Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  As the defendant has not requested the Court to construe defendant's motion to dismiss as a motion for summary judgment, the Court will not consider defendant's factual allegations, nor any of defendant's exhibits, while evaluating its motion to dismiss.

relationship with the Arc, and that this relationship was breached when the Arc allegedly fired her in derogation of its disciplinary procedure.  Therefore, plaintiff's claim for breach of contract survives this motion to dismiss.

### E.    Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress consists of "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984)(internal citations omitted). "Intent or recklessness can be inferred from the outrageousness of the acts." *Id.* (citing *Anderson v. Prease*, 445 A.2d 612, 613 (D.C. 1982)) (internal citations omitted).  "The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Smith v. District of Columbia*, 882 A.2d 778, 794 (D.C. 2005)(quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)) (internal citations omitted).  "The ultimate question is whether the [defendant's] actions constituted 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' or whether they were truly outrageous." *Rogala v. District of Columbia*, 161 F.3d 44, 58 (D.C. Cir. 1998)(quoting Restatement § 46 cmt. d).

In determining whether the conduct in question is extreme and outrageous as a matter of law, this court considers applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place. *See King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993). Generally employer-employee conflicts do not rise to the level of outrageous conduct. *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008). *See also Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997) (noting that "generally, employer-employee conflicts do not rise to the level of outrageous conduct"); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding conduct not outrageous when employer intentionally interfered with employee's ability to do job and stated false reasons for dismissing the employee); *Best*, 484 A.2d at 986 (defendant's alleged interference with plaintiff's professional responsibilities did not, as a matter of law, rise to the level of intentional infliction of emotional distress); *Waldon v. Covington*, 415 A.2d 1070, 1077-78 (D.C. 1980) (finding conduct not outrageous when employer refused to give employee-professor keys to laboratory and notice of departmental meetings, threatened to begin actions to test competency with aim to terminate, and assigned employee classes outside specialty knowing it would cause difficulty and embarrassment). If the

conduct at issue is otherwise outrageous, however, then plaintiff's status as an employee does not materially affect the sufficiency of the complaint. *Kassem*, 513 F.3d at 255.

Martin alleges that the Arc is liable under a theory of respondent superior for intentional infliction of emotional distress. This claim is based on plaintiff's allegation that when she approached her co-worker, Ms. Graham, to discuss how to best meet their clients' needs, Ms. Graham allegedly responded, "F--k you Lowry." Compl. 5.

Courts are particularly reluctant to recognize a claim for intentional infliction of emotional distress in a work-place environment when the conduct merely concerns intra-workplace treatment. *Kassem*, 513 F.3d at 256 (contrasting a viable claim for intentional infliction of emotional distress when a plaintiff alleged that his employer intentionally filed a false charge against him with a non-viable claim of merely pleading intra-workplace mistreatment). This exchange between plaintiff and Ms. Graham exemplifies an allegation of intra-workplace mistreatment. This Court finds as a matter of law that Ms. Graham's retort was a "mere insult" between co-workers and was not "truly outrageous." *See Rogala*, 161 F.3d at 58. Thus, plaintiff has failed to state a claim for intentional infliction of emotional distress, and this claim shall be dismissed.

21

## IV.   Conclusion

In light of the foregoing, defendant's motion to dismiss shall be **GRANTED** with respect to plaintiff's *qui tam* action, the retaliation claims under both the False Claims Act and the Whistleblower Protection Act, and the claim for intentional infliction of emotional distress.  Defendant's motion to dismiss shall be **DENIED** with respect to plaintiff's claim for breach of contract.

**Signed:**    **Emmet G. Sullivan**
        **United States District Judge**
        **March 28, 2008**